IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Lakeshia D. Burton**                                                                    **Plaintiff**

**Cause No. 3:13-CV-275-JTR**

**Carolyn W. Colvin, Acting Commissioner,**                              **Defendant**
**Social Security Administration**

## MEMORANDUM AND ORDER

Lakeshia D. Burton seeks judicial review of the denial of her third application for supplemental security income (SSI).[1] Burton was 20 years old when she filed her third application. She based disability on depression, back problems, and blurred vision.[2] Although she alleged disability since birth, Burton isn't eligible for SSI prior to her application date.[3] Consequently, this case considers whether Burton has been disabled since June 10, 2008 when she filed the third application.

**The Commissioner's decision**. The Commissioner's ALJ issued two unfavorable decisions in this case. The Commissioner's Appeals Council remanded

---

[1] SSA record at p. 252 (applying for SSI on June 10, 2008, and alleging disability since birth) & p. 267 (indicating first application was denied on Mar. 3, 1999 (at age 11) and second application on May 15, 2006 (at age 18)).

[2] *Id*. at p. 271.

[3] *See* 20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

the first decision for further proceedings, to include IQ testing.[4]  In the second decision, the ALJ determined Burton has severe impairments — disorder of the lumbar spine, obesity, asthma, chronic obstructive pulmonary disease, vision impairment, mood disorder, and borderline intellectual functioning[5] — but she can do some unskilled, light work.[6]  Because a vocational expert identified available work,[7] the ALJ determined Burton is not disabled under the Social Security Act and denied the application.[8]

After the Appeals Council denied a request for review,[9] the second decision

---

[4]SSA record at p. 81 (first decision dated Sept. 3, 2010) & p. 98 (Appeals Council remand order dated Mar. 29, 2012).

[5]*Id*. at p. 14.

[6]*Id*. at p. 16 (reducing light work by the following limitations: (1) occasional stooping, crouching, crawling, kneeling, and stair climbing; (2) no ladder or scaffold climbing; (3) no work hazards like unprotected heights, moving machinery, and open flames; (4) no exposure to respiratory irritants like dust, fumes or gases; (5) unskilled work involving incidental interpersonal contact, tasks that can be learned by demonstration or repetition within 30 days, few variables and little judgment, and simple, direct, concrete supervision).

[7]*Id*. at p. 73 (identifying jobs in food industry like bakery line workers and rackers as representative jobs).

[8]*Id.* at pp. 22-23.

[9]*Id*. at p. 1.

became a final decision for judicial review.[10]  Burton filed this case to challenge the decision.[11]  On review, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]

**Burton's allegation**.  Burton maintains she is entitled to disability benefits under listing 12.05C.[13]  That listing is one of the ways of proving disability based on mental retardation.[14]  Listing 12.05C consists of three essential elements: (1) "evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two;" (2) a valid verbal, performance, or full scale IQ of 60-70; and

---

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]Docket entry # 11.

[14]In 2013, the Commissioner complied with Rosa's law by replacing the terms "mentally retarded" or "mental retardation" with "individual with an intellectual disability" and "intellectual disability."  This order uses the earlier terms because the challenged decision was issued prior to the change.

(3) an additional "severe" impairment.[15] This requirement refers to the Wechsler Intelligence Scales in which "Verbal and Performance IQ scores are added together and are then converted to an overall Full Scale IQ score."[16]

Burton's IQ was tested at age 24 by a non-treating psychologist. Burton scored within the range of mild mental retardation — verbal 64, performance 63, and full scale 61.[17] *Nothing* in the medical record suggests that these IQ scores are anything other than *valid* scores.

In the ALJ's decision, he acknowledged Burton's IQ scores as follows: "Although recent IQ testing reflects a performance in the borderline range of functioning, in view of her activities of daily living and intact adaptive functioning,

---

[15]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C; *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014).

[16]William Arthur Atkins, 2 *The Gale Encyclopedia of Mental Health* 1648 (3d ed.). Pursuant to the Listing, the lowest of multiple IQ scores is considered. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.")

[17]SSA record at p. 1116. *See also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (requiring "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function"). An ALJ "may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole." *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005).

4

the undersigned is persuaded that her conditions do not meet Listing 12.05C."[18] Later in his decision, the ALJ again analyzed Burton's IQ scores: "These scores place her in the borderline range of functioning. However, as noted above, the [ALJ] is persuaded that, in view of claimant's intact adaptive functioning and robust activities of daily living, her mental functioning does not meet Listing 12.05C."[19]

Thus, the ALJ appears to have rejected Burton's IQ scores (which clearly place her in the "*mental retardation range of functioning*" not the "borderline range of functioning" that the ALJ repeatedly references) because *he believes* they are inconsistent with her adaptive functioning and activities of daily living. The *only medical evidence* cited by the ALJ to support this "belief" is the July 14, 2008 consultative examination performed by psychologist George DeRoeck. The ALJ characterized Dr. DeRoeck's examination as follows:

> [He] diagnose[d] [Burton with] . . . dysthymic disorder, early onset and

---

[18] SSA record at p. 17. The ALJ's phrase "Although recent IQ testing reflects a performance in the *borderline* range of functioning" should read "Although recent IQ testing reflects a performance in the *mental retardation* range of functioning." The ALJ repeats the mistake later in the decision: "These [IQ] scores place her in the borderline range of functioning." SSA record at p.18. Obviously, there is a marked and important distinction between a claimant who has borderline intellectual functioning and a claimant who is mentally retarded. From his decision, it appears the ALJ based his finding on the *wrong understanding* of Burton's level of intellectual functioning.

[19] SSA record at pp. 18-19.

>  "rule out" borderline intellectual development. <u>Dr. DeRoeck determined the claimant's capacity to cope with mental demands of basic work-like activities was not interfered with by her impairment.</u> Basic work-like tasks requiring a limited amount of skill or ability would find the claimant readily able to function. Her ability to attend and sustain concentration appeared favorable for basic work-like tasks. Her ability to sustain persistence did not appear to be limited by the impairment.

SSA record at p. 18 (emphasis in original).

Importantly, in Appellee's Appeal Brief, the Commissioner does *not* support the ALJ's rejection of the validity of Burton's IQ scores. Instead, she *concedes the validity of those IQ scores*: "The Commissioner concedes that Plaintiff meets the first and second prong of Listing 12.05C because her verbal, performance, and full-scale IQ scores measure 64, 63, and 61, respectively, and her back impairment, obesity, asthma, visual impairment, and mood disorder impose additional and significant work-related limitation of function[.]"[20] The Commissioner then pivots, and takes the position that the ALJ's decision should be affirmed because he found that there was no evidence supporting the onset of disabilities in intellectual and adaptive functioning *before age twenty-two*.

Having conceded the validity of Burton's IQ scores, the Commissioner does *not* address any of the Eighth Circuit case law which recognizes that "IQ at an earlier age [before age 22] can be inferred [from a later IQ score]" because "a person's IQ is

---

[20]Docket entry #12 at p.6.

presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *See Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014). In the same vein, even if Burton had the adaptive functioning necessary to perform some work, that does not negate disability under Listing 12.05C. Importantly, Listing 12.05C contemplates that a mildly retarded individual can perform some work - the crux of the Listing is whether there is a mental impairment in addition to another impairment. *See Reed v. Colvin*, ___ F.3d ___, 2015 WL 467939, *2 (8th Cir. Feb. 25, 2015) ("Listing 12.05C assumes mildly mentally retarded individuals can work if their only impairment is mild mental retardation."); *Maresh v. Barnhart*, 438 F.3d 897, 901 (8th Cir. 2006) ("the issue is not whether the claimant can perform gainful activity; rather, it is whether he has an impairment, other than his conceded mental impairment, which provides [a] significant work-related limited function") (internal alterations omitted); *see also Muntzert v. Astrue*, 502 F. Supp.2d 1148 (D. Kan. 2007) ("DSM-IV and Listing 12.05C assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have a physical or other mental impairment imposing an additional and significant work-related limitation of function.") (internal citations and quotations omitted).

**Conclusion**. For the foregoing reasons, the Court concludes that the ALJ's Listing analysis is not supported by substantial evidence. On remand, the ALJ should consider all of the medical evidence and ensure that he applies the correct legal standard in evaluating the criteria of Listing 12.05C. The Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

It is so ordered this 20th day of March, 2015.

_____
United States Magistrate Judge